UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **ROOSEVELT ROBINSON,**<br><br>Petitioner,<br><br>v.<br><br>**UNITED STATES OF AMERICA,**<br><br>Respondent. | **Civil Action No. 19-19399 (KSH)**<br><br><br>**OPINION** |

This matter has been opened to the Court by Roosevelt Robinson's amended motion to vacate pursuant 28 U.S.C. § 2255. For the reasons below, the Court denies the amended motion and also denies a certificate of appealability.

I.     <u>FACTUAL BACKGROUND & PROCEDURAL HISTORY</u>

On September 29, 2016, Robinson entered a plea of guilty to an information charging him with three counts:

(1)     attempted carjacking, on or about September 22, 2013, in violation of 18 U.S.C. §§ 2119(1) and 2;

(2)     carjacking, on or about September 27, 2013, in violation of 18 U.S.C. §§ 2119(1) and 2; and

(3) using and carrying a firearm during a crime of violence, on or about September 27, 2013, in violation of 18 U.S.C. §§ 924(c)(1)(A)(ii) and 2 and aiding and abetting in the same.

(*See* Crim. No. 16-444, Dkt. No. 40 at 1-3 (Criminal Information, Government's Attachment A).)

During the plea hearing, Robinson admitted to the following facts underlying Count 1 by responding affirmatively to a series of questions posed by the Court. On or about September 22, 2013, Robinson and two co-perpetrators approached a silver Mercedes-Benz sedan parked near a residence in Newark, New Jersey. One of the two co-perpetrators brandished a handgun and ordered the driver to get out of the car. Robinson then removed the victim from the car and got into the driver's seat. The two co-perpetrators fled on foot, and a fight ensued between Robinson and the victim. One of the co-perpetrators returned moments later and fired two shots into the car. Robinson and his co-perpetrators then fled the scene. (*See* Crim. No. 16-444, Dkt. No. 54 at 20:7-21:4 (Plea Transcript, Government's Attachment B).)

Again responding affirmatively to specific questions about the events, Robinson also admitted to the following facts underlying Counts 2 and 3 of the information. On or about September 27, 2013, Robinson, a co-perpetrator, and other individuals went searching for a vehicle to carjack in the Belleville, New Jersey area. Robinson knew that the co-perpetrator had a handgun and that the co-perpetrator would use the handgun to aid in the planned carjacking. The co-perpetrator was driving an SUV, and Robinson was driving a Nissan Altima. The co-perpetrator pulled his SUV in front of a 2013 Range Rover that was stopped at an intersection. Robinson then pulled his Altima over and served as a lookout. The co-perpetrator exited the SUV and pointed his handgun at the driver of the Range Rover. After the driver got out of the Range Rover, the co-perpetrator got into the Range Rover and fled. Robinson then fled in the Nissan Altima. (*See* Plea Transcript at 21:5-22:20.)

On January 25, 2017, this Court sentenced Robinson to 171 months imprisonment. (*See* Crim. No. 16-444, Dkt. No. 46 (Criminal Judgment, Government's Attachment C).) Count 3, the § 924(c) count, carried a mandatory term of 84 months' imprisonment. *See* 18 U.S.C. §

924(c)(1)(A)(ii). The term for Count 3 must run consecutive to Counts 1 and 2, the § 2119 carjacking counts. *See* 18 U.S.C. § 924(c)(1)(D)(ii). For Counts 1 and 2, the plea agreement stipulated a Guidelines offense level of 27. (*See* Crim. No. 16-444, Dkt. No. 44 at 10 ¶ 20 (Plea Agreement, Government's Attachment D).) The Court accepted that offense level. (*See* Sentencing Transcript at 26:16-24 (Government's Attachment F).) Although Probation calculated Robinson's Criminal History Category as VI, the Court granted him a downward departure to Category III. (*See id.* at 8:1-9:17.) The 171-month term consisted of concurrent 87-month sentences for Counts 1 and 2 and the mandatory 84-month consecutive sentence for Count 3. (*See* Criminal Judgment at 2.)

By letter dated July 26, 2017, Robinson raised a sentencing-error claim he now raises in this § 2255 proceeding. (*See* Crim. No. 16-444, Dkt. No. 48 (July 2017 Letter, Government's Attachment G).) On October 21, 2019, Robinson filed his original motion under 28 U.S.C. § 2255.[1] (ECF No. 1.) On January 6, 2020, Robinson filed an amended motion under 28 U.S.C. § 2255. (ECF No. No. 4.) The amended motion raises two grounds for relief: 1) that Robinson's conviction under Count 3 of the Information, charging him with violating 18 U.S.C. § 924(c)(1)(a)(ii) is void in light of *United States v. Davis*, 139 U.S. 2319 (2019); and 2) that the Court failed to grant him credit for 22 months he spent in state custody.

On January 31, 2020, the Court ordered the government to answer the motion. (ECF No. 5.) The government filed its answer on July 17, 2020. (ECF No. 14.) On February 15, 2021, Robinson filed a letter claiming that he submitted a request to amend his motion on or about February 3, 2020. (ECF No. 17.) In this submission, Robinson asserts that his conviction was not

---

[1] On July 22, 2019, Robinson also filed a "motion" for relief under § 924(c) in his criminal case. (Crim. No. 16-444, Dkt. No. 53.)

3

knowing or voluntary because no one involved his criminal proceeding understood that carjacking was not a proper predicate for his conviction under § 924(c). (*See* ECF No. 17 at 2-5.) In addition, Robinson argues that his conviction for the § 924(c) offense is invalid because he did not brandish the firearm during the September 27, 2013 carjacking or "take the car himself." (*See id.* at 6.)

## II.   STANDARD OF REVIEW

Under § 2255, a federal prisoner may move to vacate, set aside, or correct his federal sentence if: (1) "the sentence was imposed in violation of the Constitution or laws of the United States"; (2) the court lacked "jurisdiction to impose" the sentence; (3) the sentence exceeded "the maximum authorized by law"; or (4) the sentence is "otherwise subject to collateral attack[.]" 28 U.S.C. § 2255(a).

A criminal defendant bears the burden of establishing his entitlement to § 2255 relief. *See United States v. Davies*, 394 F.3d 182, 189 (3d Cir. 2005). Moreover, as a § 2255 motion to vacate is a collateral attack on a sentence, a criminal defendant "must clear a significantly higher hurdle than would exist on direct appeal." *United States v. Travillion*, 759 F.3d 281, 288 (3d Cir. 2014) (citing *United States v. Frady*, 456 U.S. 152, 166 (1982)). In considering a motion to vacate a defendant's sentence, "the court must accept the truth of the movant's factual allegations unless they are clearly frivolous on the basis of the existing record." *United States v. Booth*, 432 F.3d 542, 545 (3d Cir. 2005) (internal quotation marks and citation omitted).

## III.  DISCUSSION

### a. A Completed Carjacking is a Valid Predicate under the Elements Clause of 18 U.S.C. § 924(c)(3)(A)

Robinson argues that his § 924(c) conviction must be overturned because it was dependent upon his conviction for carjacking, which no longer qualifies as a crime of violence

after *United States v. Davis*, 139 S. Ct. 2319, 2336 (2019) (holding that the residual clause in 18 U.S.C. § 924(c)'s definition of "crime of violence" is void for vagueness).[2]

Section 924(c) punishes "any person who, during and in relation to any crime of violence ..., uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm." 18 U.S.C. § 924(c)(1)(A). Under § 924(c), a crime of violence is defined as "an offense that is a felony" and

> (A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
>
> (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

*Id.* § 924(c)(3)(A)–(B). Courts refer to § 924(c)(3)(A) as the "elements clause" and § 924(c)(3)(B) as the "residual clause." After *Davis*, to qualify as a crime of violence, a predicate crime must satisfy the "elements clause" of § 924(c). Under that clause, a predicate must have

---

[2] On June 26, 2015, the Supreme Court held that the residual clause of the Armed Career Criminal Act ("ACCA") was unconstitutionally vague. *Johnson v. United States*, 576 U.S. 591 (2015). *Johnson* announced a new rule of constitutional law made retroactive to cases on collateral review. *See Welch v. United States*, 578 U.S. 120 (2016). On April 17, 2018, the Supreme Court held that a similarly-worded provision of 18 U.S.C. § 16(b) was also unconstitutionally vague. *See Sessions v. Dimaya*, 138 S. Ct. 1204, 1223 (2018). On June 24, 2019, the Supreme Court held in *Davis* that the residual clause in 18 U.S.C. § 924(c)'s definition of "crime of violence" was also void for vagueness. *See Davis*, 139 S. Ct. at 2336.

The government argues that Robinson's claim is procedurally defaulted and barred from review absent a showing of cause and prejudice or actual innocence. *See United States v. Jenkins*, 333 F.3d 151, 155 (3d Cir. 2003). The Court assumes that Robinson can establish cause to overcome the procedural default of his *Davis* claim. Courts in this circuit have determined that "it is at least plausible that the same rationale that supported the novelty exception for *Johnson* motions would support its application to *Davis* motions." *United States v. Scott*, 521 F. Supp. 3d 538, 545 (M.D. Pa.) (citing cases), appeal filed, No. 21-1539 (3d Cir. Mar. 22, 2021). Thus, it stands to reason that Robinson has established cause for failing to raise a vagueness challenge to Section 924(c)'s residual clause on direct review, because the state of the law at the time of his conviction, after *Johnson* but prior to *Dimaya* and *Davis*, did not offer a reasonable basis upon which to challenge the guilty plea. *See Reed v. Ross*, 468 U.S. 1, 17 (1984).

5

"as an element the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 924(c)(3)(A). That inquiry asks whether the government must always "prove—beyond a reasonable doubt, as an element of its case—the use, attempted use, or threatened use of force." *United States v. Taylor*, 142 S. Ct. 2015, 2020 (2022). In conducting this analysis, courts use the categorical approach and "look only to the statutory definitions'— i.e., the elements—of a defendant's offense, and not to the particular facts underlying [the offense]." *Descamps v. United States*, 570 U.S. 254, 261 (2013) (cleaned up).

Here, the predicate offense for Robinson's § 924(c) conviction is a completed carjacking in violation of 18 U.S.C. §§ 2119. Although the Third Circuit has not decided in a precedential decision whether carjacking is categorically a crime of violence under § 924(c)'s elements clause, it has denied a certificate of appealability on this issue. *See United States v. Smith*, No. 19-2257, 2021 WL 2135947 at *1 (3d Cir. May 11, 2021) (denying certificate of appealability because "reasonable jurists would not debate the conclusion that carjacking in violation of 18 U.S.C. § 2119 categorically constitutes a crime of violence under the elements clause of 18 U.S.C. § 924(c)(3)(A)").

Notably, the Third Circuit has also held that a federal bank robbery by intimidation is a crime of violence under the § 924(c)(3) elements clause, *see United States v. Johnson*, 899 F.3d 191, 204 (3d Cir. 2018), and the relevant force elements of a completed bank robbery under 18 U.S.C. § 2113 are identical to the elements of a completed carjacking under 18 U.S.C. § 2119. The relevant language of the bank robbery statute provides: "[w]hoever by force and violence, or by intimidation, takes, or attempts to take, from the person or presence of another ..." 18 U.S.C. § 2113(a). The relevant language of the carjacking statute at issue here provides: "[w]hoever, with the intent to cause death or serious bodily harm, takes a motor vehicle ... from the person or

presence of another by force and violence or by intimidation, or attempts to do so ...". 18 U.S.C. § 2119. The least culpable conduct for a completed bank robbery or completed carjacking is "intimidation," and the Third Circuit has found that bank robbery by intimidation categorically has as an element the "threat of force." *Id.* at 204 (quotations and citation omitted); *see also United States v. Bonner*, 521 F. Supp.3d 554, 567 (M.D. Pa. 2021) (explaining the same and holding that a completed carjacking is a crime of violence of under the elements clause).

Finally, every circuit court to address this question has held that carjacking in violation of § 2119 is a crime of violence under § 924(c)'s elements clause. *See, e.g. United States v. Felder*, 993 F.3d 57, 80 (2d Cir.), *cert. denied*, 142 S. Ct. 597 (2021) (recognizing federal carjacking as a § 924(c)(3)(A) crime of violence); *Ovalles v. United States*, 905 F.3d 1300, 1304 (11th Cir. 2018) (per curiam), *cert. denied*, 139 S. Ct. 2716 (2019); *Estell v. United States*, 924 F.3d 1291, 1293 (8th Cir. 2019) (same); *United States v. Jackson*, 918 F.3d 467, 485–86 (6th Cir. 2019) (same); *United States v. Cruz-Rivera*, 904 F.3d 63, 66 (1st Cir. 2018) (same); *United States v. Evans*, 848 F.3d 242, 247 (4th Cir. 2017) (same).

In light of this substantial authority, the Court finds that Robinson's conviction under Count 2 for carjacking in violation of § 2119 is a crime of violence under the elements clause of § 924(c)(3)(A). The Court, therefore, rejects his claim that his carjacking conviction is an invalid predicate offense under *Davis*.[3]

In his supplemental motion, Robinson asserts that his § 924(c) conviction is invalid because he did not personally brandish the firearm or take the car himself during the September 27, 2013 carjacking that forms the basis for Count 2. The Court understands Robinson to contend that his

---

[3] Because carjacking is a valid predicate offense for his § 924(c) offense, Robinson's argument that that his plea was not knowing and voluntary due to the alleged confusion over this issue is likewise meritless.

7

conviction for carjacking is not a valid predicate for his § 924(c) conviction because it relies on an aiding and abetting theory of liability.[4]

On June 12, 2023, the Third Circuit held as a matter of first impression that "aiding and abetting a completed Hobbs Act robbery qualifies as a crime violence under § 924(c)."[5] *United States v. Stevens,* 70 F.4th 653, 662 (3d Cir. 2023).

> "Section 2 of U.S. Code, Title 18, the federal aiding and abetting statute, requires the Government to prove '(1) that <u>the substantive crime has been committed</u>; and (2) that the defendant charged with aiding and abetting knew of the commission of the substantive offense and acted with intent to facilitate it.'"

*Id.* at 661 (quoting *United States v. Petersen*, 622 F.3d 196, 208 (3d Cir. 2010) (emphasis in original). The court explained that aiding and abetting offenses under § 2 are distinguishable from "the types of inchoate offenses that require only that a defendant take a 'substantial step' towards a completed offense." *Id.* (citing *Taylor*, 142 S. Ct. at 2021). Therefore "[u]nder § 2, where the underlying substantive offense includes, as an element, the use of physical force, that same physical force is necessarily an element of aiding and abetting liability." *Id.* (citing *United States v. Ali*, 991 F.3d 561, 574 (4th Cir. 2021) ("[A]iding and abetting a crime has the exact same elements as the principal offense.")). The court went on to explain that "because the force required for completed Hobbs Act robbery is sufficient to satisfy the elements clause, the force required for

---

[4] The information charged Robinson with aiding or abetting under 18 U.S.C. § 2. *See* Criminal Information. It is well established, however, that aiding and abetting need not be specifically charged. *See United States v. Forsythe*, 560 F.2d 1127, 1136 n. 15 (3d Cir. 1977) (every "indictment must be read as if 18 U.S.C. § 2 were embodied in each count"); *U.S. v. Wasserson*, 418 F.3d 225, 232 (3d Cir. 2005) (explaining that "indictment need not specifically charge aiding and abetting in order to support a conviction for aiding and abetting").

[5] In *United States v. Stoney*, 62 F.4th 108, 113-114 (3d Cir. 2023), the Third Circuit held that *Taylor* "[did] not change our [pre-*Taylor*] position" that "completed Hobbs Act robbery is categorically a crime of violence under § 924(c)(3)(A)." *See id.* at 113-14. In *Stoney*, however, the Third Circuit expressly left open whether a Hobbs Act robbery conviction under an aiding and abetting theory of guilt qualified as a valid § 924(c) predicate. *Id.* at 112.

8

an aiding and abetting conviction is necessarily also sufficient." *Id.* (cleaned up). Although *Stevens* addressed a completed Hobbs Act robbery, its rationale applies equally to a completed carjacking or any completed crime of violence. *See, e.g.*, *Steiner v. United States*, 940 F.3d 1282, 1285 (11th Cir. 2019) (aiding and abetting a carjacking qualifies as a crime of violence under the elements clause of § 924(c)(3)(A)).

Indeed, other circuits considering this issue have held that aiding and abetting a completed crime of violence is itself a crime of violence under the elements clause of § 924(c)(3)(A). *See United States v. McCoy*, 995 F.3d 32, 57–58 (2d Cir. 2021) ("If the underlying offense is a crime of violence, it is a predicate for § 924(c) liability; if the defendant aided and abetted that underlying offense, he is guilty of the underlying offense.");[6] *United States v. Ali*, 991 F.3d at 574 ("Because there are no new elements on which the categorical approach can operate, it is impossible for the analysis of aiding and abetting a crime to come out differently than the principal crime."); *United States v. Richardson*, 948 F.3d 733, 741–42 (6th Cir. 2020) ("There is no distinction between aiding and abetting the commission of a crime and committing the principal offense. Aiding and abetting is simply an alternative theory of liability indistinct from the substantive crime."); *Steiner v. United States*, 940 F.3d at 1285 (aiding and abetting a carjacking qualifies as a crime of violence under the elements clause of § 924(c)(3)(A)); *United States v. Deiter*, 890 F.3d 1203, 1214-16 (10th Cir. 2018) (holding that aiding and abetting federal bank robbery is a "violent felony" under the elements clause of the Armed Career Criminals Act); *United States v. García-Ortiz*, 904 F.3d

---

[6] In *McCoy*, the Second Circuit also held that attempted Hobbs Act robbery was a crime of violence. That portion of the holding was overruled by the Supreme Court's decision in *United States v. Taylor*, 142 S. Ct. 2015 (2022). On June 27, 2022, the Supreme Court vacated the judgment in *McCoy* and remanded for consideration in light of *Taylor*. *See McCoy v. United States*, 142 S.Ct. 2863 (Mem) (Jun 27, 2022). However, *McCoy's* holding regarding aiding and abetting liability remains valid.

102, 109 (1st Cir. 2018) (explaining that an aider and abettor is "'punishable as a principal,' and thus no different for purposes of the categorical approach than one who commits the substantive offense").

Moreover, Robinson's fact-specific plea colloquy contains sufficient facts to show that he aided and abetted a completed carjacking. In the context of a § 924(c) guilty plea, courts look to the factual proffer, plea hearing, and other evidence in the record to determine if a qualifying predicate offense was committed. *See United States v. Collazo*, 856 F. App'x 380, 383 (3d Cir. 2021). In order to aid and abet a § 924(c) offense, "the defendant must know beforehand that a gun will be used." *United States v. Johnson*, 899 F.3d 191, 204-05 (3d Cir. 2018) (citing *Rosemond v. United States*, 572 U.S. 65, 67 (2014)). The Supreme Court has held that a defendant like Robinson who actively participates in a crime "has the intent needed to aid and abet a § 924(c) violation when he knows that one of his confederates will carry a gun." *See Johnson*, 899 F.3d at 204 (citing *Rosemond*, 572 U.S. at 67).

Robinson and his co-perpetrator, Hines, were in separate cars when they committed the September 27, 2013 carjacking. The colloquy at his plea hearing contained the facts required to establish that Robinson aided and abetted a completed carjacking, including his awareness that Hines had a gun to aid in the offense.

> THE COURT: Counts 2 and 3, on or about the morning of September 27, 2013, were you, Hines, and several other individuals searching for a vehicle to carjack in the Belleville, New Jersey area?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Did you know that Hines was in possession of a handgun and would use the handgun in connection with the planned carjacking?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Was Hines traveling in a dark colored SUV that morning?

10

> THE DEFENDANT: Yes.
>
> THE COURT: Were you driving a Nissan Altima?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Did the dark colored SUV eventually pull in front of a white 2013 Range Rover that was stopped at an intersection?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Did Hines get out of the dark colored SUV, point a handgun at the driver of the Range Rover, and pull the driver out of the vehicle?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Did you pull over in the Nissan Altima and serve as a lookout --
>
> THE DEFENDANT: Yes.
>
> THE COURT: -- while Hines committed the carjacking?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Did you -- or after removing the driver from the Range Rover, did Hines get into the Range Rover and flee?
>
> THE DEFENDANT: Yes.
>
> THE COURT: And then did you flee in the Nissan Altima along with the dark colored SUV?
>
> THE DEFENDANT: Yes.

(*See* Plea Transcript at 21:5-22:13.)

In sum, because a completed carjacking is a valid predicate under § 924(c)'s elements clause and because aiding and abetting a completed carjacking has exactly the same elements, Petitioner's conviction under § 924(c) is valid, and the Court denies relief on this claim.

### b. The Court did not Fail to Credit Robinson for 22 Months in State Custody

Robinson also seeks to correct his sentence, claiming that he "was granted jail time previously to being sentence by Honorable Judge Hayden." (Motion at 5.) The Court construes this claim together with Robinson's July 2017 letter to the Court in which he wrote that he was

granted "a 22[-]month credit due to the time that [he] already had served prior to [his] sentencing." (July 2017 Letter at 1.) Robinson is mistaken.[7]

Robinson's attorney's sentencing memorandum provides the relevant background for the disputed 22-month period. In this submission, counsel stated:

> Mr. Robinson was arrested on [the charges in the Information] on September 27, 2013. His parole was violated by New Jersey due to these charges and he was returned to New Jersey Custody on September 27, 2013. He remained a New Jersey inmate until July 30, 2015 when he was placed into United States Marshal custody at Essex County Jail. Thus, Mr. Robinson will receive 22 months less credit for time served before sentencing than [his co-perpetrator Hines] by the Bureau of Prisons.

(Defendant's Sentencing Submission at 4 (emphasis added); *see also* PSR at 14, ¶ 58 (explaining that Mr. Robinson spent this 22-month period in state custody because these instant federal offenses violated the terms of his state ISP supervision).)

But at sentencing, with Robinson present, Robinson's attorney acknowledged that this 22-month period in state custody would not be credited against Robinson's federal sentence:

> And as I also note, your Honor, and once again I am foreclosed because of the plea agreement, but I felt that it was necessary to bring it to the Court's attention was that my client will not receive a 22[-]month credit by the Bureau of Prisons because of the ISP violation. Whereas his co-defendant . . . will receive the entire 40 months of credit since the date of his arrest. My client had only received 18 months from the period he was released, I believe in

---

[7] The Court agrees with the government that Robinson's sentencing error claim is barred by the collateral attack waiver in his plea agreement. Nevertheless, the Court will address on the merits Robinson's claim that this Court failed to credit him for the 22 months he spent in state custody. The July 2017 letter arguably attributes the same sentence-computation error to the BOP. This Court lacks subject matter jurisdiction over any potential claim that the Bureau of Prisons miscalculated his sentence, and such claims must be brought in a petition under 28 U.S.C. § 2241 in the district where Robinson is imprisoned. *See United States v. Addonizio*, 442 U.S. 178, 185-88 (1979) (holding that § 2255 authorizes challenges to the lawfulness of a federal sentence, not to the lawfulness of the performance of judgment and sentence); *Ruggiano v. Reish*, 307 F.3d 121, 132-133 (3d Cir. 2002). This Court does not construe Robinson to raise a claim against the BOP in his amended motion, but any such claim would be subject to dismissal for lack of subject matter jurisdiction.

>June 2015 or July of 2015, when he was transferred from state prison to Essex County jail and formally became a United States Marshal's inmate.

(Sentencing Transcript at 7:3-14 (emphasis added).)

This Court also stated several times at sentencing that Robinson would not receive federal credit for the time spent in state custody:

>The system gave him breaks and he blew those breaks. He just didn't perform. But that is something the state dealt with. It whacked him with 22 months and he's paid it, and it's going to have effects on how much federal time he's going to do going forward, because he doesn't get credit for approximately 18 of the 40 months that he served. That's how the state does it. He's paying a price for it.

(Sentencing Transcript at 8:16-23.)[8] When imposing sentence, the Court explained that "Mr. Robinson has served 22-- 40 months [for the violation of ISP]. But 18 of those months are available to apply against that sentence." (*See* Sentencing Transcript at 32:9-20.)

The record refutes Robinson's claim that the Court erred in failing to credit him 22 months for his time spent in state custody. In addition, this Court took the unavailability of federal credit for this 22-month period expressly into account when it granted Robinson a downward departure from Criminal History Category VI to III. (*See* Sentencing Transcript at 8:11-9:17.) That downward departure lowered Robinson's Guidelines range for Counts 1 and 2 from 130-162 months to 87-108 months, a reduction of 54 months on the maximum end and 43 months on the minimum end. (*See* Sentencing Transcript at 8:11-9:17.) This Court ultimately sentenced Robinson to the bottom of the range. (*See* Sentencing Transcript at 34:5-12.) Thus, this Court provided Robinson a generous sentencing discount, partly to account for the fact that there was no credit

---

[8] Although this Court indicated that Robinson would not receive federal credit for "18 of the 40 months" he had served at that point, the Court's reference to "18" months rather than "22" months was incorrect. Robinson did get federal credit for the 18 months he spent in federal custody—he did not receive federal credit for the remaining 22 months of his pre-sentence confinement, which he spent in state custody.

available for the 22-month period he spent in state custody. The Court rejects Robinson's sentencing error claim.

## IV. CONCLUSION

For the reasons stated in this Opinion, the Court denies Robinson's amended motion. The Court also denies a certificate of appealability ("COA") because reasonable jurists would not find the Court's assessment debatable. *See* 28 U.S.C. § 2253(c)(2) (a certificate of appealability is warranted "only if the applicant has made a substantial showing of the denial of a constitutional right."); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). An appropriate Order follows.

                                *s/Katharine S. Hayden*
                                KATHARINE S. HAYDEN
                                United States District Judge

DATED: July 19, 2023.